Good afternoon, Your Honor. Good afternoon, all of your honors. May it please the Court, Counsel, and representing the defendant in this case, Steve Thompson. Mr. Thompson was convicted on a theory of felony murder. Specifically, the jury found that on January 3, 1997, the defendant killed 16-month-old Shardae Williams, the daughter of his live-in girlfriend, in the course of committing aggravated battery. Mr. Thompson was sentenced to a term of natural life imprisonment. That conviction and sentence were affirmed by this Court on direct appeal. Defendant subsequently filed a pro se post-conviction petition raising several issues. Counsel was appointed to represent him. Counsel also raised several issues. In addition, he made a request for re-sentencing based on People v. Reuters, the Illinois Supreme Court decision. Counsel also filed a motion asking for the appointment of experts to assist him in developing and presenting some of the post-conviction issues, including appointment of a forensic pathologist in order to be able to dispute the state's theory at trial that the child had died as a result of shaken baby syndrome. The trial judge agreed that Reuters invalidated the life sentence and therefore Thompson had to receive a new sentencing hearing. The judge conducted that hearing and imposed a new sentence of 52 years in prison. However, prior to conducting that new sentencing hearing, he granted the state's motion to dismiss without an evidentiary hearing all of the post-conviction claims. Now, the judge did not specifically rule in the motion for appointment of experts. However, statements by post-conviction counsel on the record indicate that the judge felt the motion was premature. Defendant submits the motion was not premature. Appointment, particularly of a forensic pathologist, might have helped counsel develop and fully present a constitutional violation to the court. And the judge certainly has authority, according to Illinois case law, to appoint experts in post-conviction proceedings. Defendant further submits that while the judge was correct to dismiss some of the post-conviction claims at the second stage, other claims were too complex to be therefore asked this court on appeal in Issues 2, 3, and 4 to remain this cause for additional proceedings as to three of the post-conviction issues. In Issue 5, he alternatively argues that the new sentence of 52 years was excessive and he asks this court to reduce it. Finally, in Issue 1, he argues his pro se petition was timely filed. Because when the judge granted the state's motion to dismiss, he gave two alternative rulings. One was that the petition was lacking in merit. The other is that it was filed too late. Defendant submits, under an exception recognized in Illinois case law, it was not filed too late. In an argument today, I'd like to address that issue, Issue 1, and also Issue 4, concerning the topic of shaken baby syndrome. With regard to that topic, Dr. Bloom specifically testified that the child died of head trauma, and he couldn't rule out the shaken aspect of it as well, but it was head trauma. How would further research in shaken baby syndrome negate head trauma? That's different than shaken baby syndrome. Well, two things. Head trauma is something, right? Excuse me? Go ahead. Well, two things about that. First of all, the trial was clearly dominated by expert witness testimony, most of which testimony went to the topic of shaken baby syndrome. Two witnesses testified to that proposition for the state, one of whom was a forensic pathologist. Even a defense witness, a defense expert witness, testified about shaken baby syndrome. The only difference in his testimony was that the injuries may have occurred earlier at a time the defendant was not alone with the child. So, although your Honor is correct about the testimony of the pathologist, as I say, the case, as it was presented to the jury, was truly dominated by shaken baby syndrome, and even this court in the direct appeal, the decision in the direct appeal, stated that the evidence of trial showed the child died from shaken baby syndrome. In addition... Where does it show that in the earlier opinion? That's my recollection of this court's decision in the direct appeal. In the court's decision, there was a discussion of if the defendant was not prejudiced by counsel's failure to object to the introduction of the defendant's prior abuses against his daughter, because such an objection would have been overruled. It's based on an evidentiary matter. The record reflects that the victim died on January 3rd. The defendant testified that he bit the victim on the stomach when he was intoxicated. He also admitted stepping on her thigh when he allegedly fixing the television. The bruise to the thigh occurred about 12 to 18 hours before death. This evidence was relevant to show a pattern of abuse against his daughter that eventually culminated in his shaking her to death. He says, you know, that is stated in the opinion. Right. But that's not some kind of finding that the only thing that was affirmed was shaken baby syndrome. I mean, the evidence of the jury verdict wasn't divided up. It was a verdict against the defendant, and the defendant was charged with blunt head trauma and shaken baby syndrome. And the testimony at trial, in addition to the shaken baby syndrome experts, had a person say the child died of blunt force injury to the head. Now, that is different than shaken baby syndrome. The second point I would make. Defendant told police and testified at trial that he heard a loud noise coming from the living room, went into the living room, saw the child laying at the foot of some stairs. Said he didn't know what happened. He denied shaking or otherwise harming her, but he speculated. Not a doctor, doesn't know for sure, but speculated that since he found her unresponsive at the foot of the stairs, perhaps she fell from the stairs, and perhaps that led to that brain trauma. The pathologist testified back in 1997 that a short fall, such as the fall down the stairs, could not have given rise to those injuries. Issue four, shaken baby syndrome, is all about the advances, for lack of a better term, within the medical community as to the diagnosis of shaken baby syndrome. But in addition, as I note in the brief, since the time of the 1997 trial, there has also been a difference of opinion as to whether short falls can lead to the type of brain trauma that apparently this child suffered from. And in this day and age, there are many medical experts who say yes, it can. So, although issue four primarily points to the question of shaken baby syndrome, saying that, again, the 1997 trial, that's what seemed to dominate this trial, now would be a much closer question. There will also be a much closer question today as to whether a short fall, such as a possible fall down the stairs, could have led to this child's injuries. Well, I'm talking about in this record here today, the request is for the shaken baby syndrome. Right. I think in general, and maybe I could have framed it differently, I do know in the brief that the difference of opinion now is to short falls leading to such injuries, and I think both can certainly be explored in further proceedings. Suffice it to say, the defendant's position is not an issue that can be resolved at the second stage. Now, as I mentioned, back in 1997, there really wasn't much dispute about these types of injuries. And there was, as to the experts here, there wasn't that much of a difference of opinion, and that has changed in the intervening years. There now exists a fierce dispute over the basic causation of these injuries. This type of brain trauma can only be caused by a violent shaking of the child. Some doctors say yes, it certainly can. Others say no, it cannot. And yet other doctors believe that while the diagnosis may still be valid in some cases, there are also non-intentional, non-criminal causes for some of these brain injuries. And so the question is not nearly as one-sided now as it was back then. Now, it's interesting because if you take away the expert witness testimony from this trial, and look at the other evidence that was presented at trial back in 1997, there wasn't that much incriminating evidence against the defendant. Well, the defendant claimed that the child choked to death. He speculated that was a possibility because he said that she had eaten dinners and potatoes shortly prior to him hearing the thumping noise and seeing her lying unresponsive in front of the stairs. Dr. Bloom said it was a homicide. That's correct. So this is what the defendant said. This is what he speculated to. He's not a doctor. He testified in essence he had no clue what caused this child's injuries, what caused this child's death. When he saw her unresponsive, he turned her over, tapped her on the back, and she vomited some food. And so he thought maybe she had fallen, maybe she had choked, maybe she had choked in the course of falling or vice versa. So he speculated to that. That was his speculation, being a non-expert, a non-doctor, and not having even seen, he said, what really happened to this child. So that was his speculation. But he never said he shook the child. He denied harming the child. There was no eyewitness testimony. There was another five-year-old child, but apparently too young to testify, so no eyewitness, and no real physical evidence proving that Steve Thompson caused these injuries. So it was a case that was dominated by medical expert testimony. That's what did it. And it was, as I say, not a close case at the time this case was tried. Now, generally when the defendant makes a claim, a post-conviction petition, a claim of actual innocence based on newly discovered evidence, we're talking about physical evidence. In this case, it's unusual because here we're talking about scientific or medical evidence and different viewpoints occurring over time. In the brief, I talk about a case out of the state of Wisconsin called State v. Edmonds. In that case, Ms. Edmonds was tried about a year or two before Steve Thompson was tried on a similar theory, shaken baby syndrome. She was convicted, and the evidence at trial was primarily this medical testimony that was not closely contested. Later in 2006, at about the time Steve Thompson filed his pro se post-conviction petition, Ms. Edmonds filed a similar collateral petition in Wisconsin based on this dispute, which didn't exist at the time of trial, but did at the time she filed her petition. And the Wisconsin Court of Appeals pursued an analysis similar to that pursued by Illinois courts in cases where a defendant claims actual innocence based on newly discovered evidence. Cases, for example, like Wohlstadt and Ortiz that looked to not necessarily whether the new evidence would unequivocally show the defendant's innocence, but rather whether the new evidence is substantial and whether it should be considered by a new trial effect. In conjunction with the evidence presented at trial. But if you take away all the testimony about the shaken baby syndrome, you still have the doctor's testimony about blunt force injury to the head. And again, here you might well have testimony through a forensic pathologist that contrary to the common thought in 1997, there is a belief in the medical community today that some of these brain trauma injuries can result from short falls. Again, something that was totally rejected at the time of the trial. So there are really two competing issues here in this case. In Edmonds, the Court of Appeals granted the defendant a new trial, feeling that if a new trial in fact heard about this dispute, this change of opinion in the medical community, it might well vote to acquit. Now, because this is a second stage dismissal, I'm not asking for a new trial. What the defendant is asking for is additional proceedings and an ability to fully present this issue to the judge and allow the judge to make a fully informed decision as to whether or not Thompson should receive a fair trial. Now, the state notes correctly that this was not specifically raised as a separate issue in the post-conviction petitions, and therefore the state argues the issue has been waived. The defendant would note that, and that is true, that is true. In written response to the state's motion to dismiss, the defense counsel argued that shaken baby syndrome has been discredited. He also argued that orally at the hearing on the state's motion to dismiss. And as I noted before, counsel also asked for the appointment of a forensic pathologist in order to be able to counter this theory. Defendants admits that counsel at least set forth the broad outline of this issue sufficient to present it. If your honors disagree, I would ask you to find that the defendant did not receive a reasonable level of assistance that's demanded of appointed post-conviction counsel. Now, it's true counsel has no obligation to go beyond the defendant's pro se petition, but by his comments, clearly counsel knew that this issue was out there. He even said, Judge, I've got 37 pages here showing it's been discredited. I think he would have been better served to submit those pages and say, Judge, you have to look at this and this is a separate issue. He didn't do that. If he didn't adequately present it, I think he missed the boat, and for that alternative reason, defendant asked your honors to remand. Defendant would also note with respect to timeliness, which we didn't really get to, that certainly whatever your honors' decision is as to that issue, it shouldn't bar this particular issue because this is akin to a claim of innocence, which would not be barred by timeliness. And of course, it doesn't bother to bar the final fifth issue going to excessive sentence because he filed a separate appeal from the imposition of the sentence in this case. Thank you, your honors. Mr. Arado, good afternoon. Good afternoon. Good afternoon, your honors. Counsel, may I please report. Thomas Arado for the people. I guess we've jumped into the substantive issues in the post-conviction petition, but I think the procedural issues need to be addressed. Essentially, is this post-conviction petition even able to have been heard because defendant was not resentenced until after? Because what? Defendant was not resentenced until after. His argument below here was that his conviction, his sentence was void because of finding unconstitutional the statute in which he was sentenced. If that's the case, then does he have a conviction for the purposes of the post-conviction hearing? If he doesn't, then the court couldn't hear the post-conviction hearing until after he was resentenced. The court then overturned his conviction. They remanded a free sentencing, right? In which? It was remanded for a sentencing hearing, correct? Not in this case. It was his freestanding motion to be resentenced. Yeah, right. Which came after he filed his post-conviction petition. Granted, the defense counsel suggested that they hear it having been sentenced first. He suggested it? Yes. Fairly vigorously? Well, on two occasions. Whether the trial court erred in not sentencing him until afterwards or not, I think is kind of beside the point. The post-conviction hearing act is really clear that you have to have a conviction in order to have the post-conviction petition. The question that has to be answered by this court first is, was he convicted at the time? Did he have a conviction at the time the post-conviction hearing was held? His conviction wasn't vacated, was it? His sentence was vacated. It had his conviction in it. It was just remanded back. So he was convicted subject to resentencing? Well, under Hager, Wood, and Ingram, the Supreme Court has said that, well, not all of them are Supreme Court cases, but said that conviction is a term of art, which you have to have a sentence in order to be considered convicted. So for it to be perfected, quite a perfected conviction, there has to be the sentence. Right. So if his sentence is void, does he have a conviction? I'm not, you know, if the defendant wants to say he had a conviction at that time, then we can go on to the, and this court finds that he had a conviction at the time, then we can go on to discuss whether the post-conviction petition was properly dismissed. If that is the case, well, as the defendant admits, it was untimely. It was a 2006 filing of the post-conviction petition, and his petition had been filed in 1999, I believe. So that's seven years past the time for filing. There is no claim, freestanding claim, in his petition of actual innocence, which comes to the other point regarding his shaken baby syndrome argument that was not included in the post-conviction petition at all. The defendant even admits that. Jones, the Illinois Supreme Court, stated our appellate court is not free, as this court is, under its supervisory authority to excuse, in the context of post-conviction proceedings, an appellate waiver caused by a failure of a defendant to include issues in his or her post-conviction petition. So there is no, at this juncture, even if the petition was timely, the issue of the shaken baby syndrome was not included in the petition, therefore it cannot be, it is waived. It was argued, wasn't it? Sorry, what? It was argued. It was argued, but the clear mandate of the post-conviction petition and the Illinois Supreme Court is you have to include it in your petition. So then would it be a fair statement to say, at least it's arguable that because he argued it, but didn't include it, that at least that would be an effective assistance, an effective, a reasonable assistance, that if he felt it was an issue enough to argue, that he should have crafted it into an argument that was put into the petition? Arguably. I mean, the fact of the matter is he certainly had that 37 pages, which he never submitted. The other point, another point in the argument, is that even if you take away the shaken baby syndrome evidence in this case, it was blunt force trauma was the actual cause of death as stated by Dr. Bloom. So it really is irrelevant whether the shaken baby syndrome evidence is presented or not. Excuse me just a second. Dr. Bloom was testimony. We don't know what the jury found. I mean, we don't know what the jury decided was the basis for the conviction. Dr. Bloom was testimony that said there was blunt force trauma. There's I can't rule out shaken baby. Then you've got these other three experts for example saying shaken baby. We don't have anything to indicate that the jury did not make its determination based on shaken baby. Well, you have to look at all the evidence. That's what I'm trying to do. Right. But the point is, if you're aware of the shaken baby evidence, you still have blunt force trauma evidence. And that was actually the testimony of the pathologist saying this is the cause of death. I'm sorry. I don't understand how we can just say we're going to take out this evidence and then decide that this was the basis for the jury verdict. That doesn't make sense to me. We'll have to consider the prejudicial aspect. The question is whether the evidence, if there was no error, the result of the trial would have been different. And the answer to that is no, it wouldn't have been different because they would have heard that blunt force trauma was the cause of the injury or the cause of the death. Okay. They might have considered something else besides just the other evidence with regard to the blunt force. I mean, we're still dealing only with this is what the coroner's finding was. It's the coroner's finding. What did the jury decide? And we don't know what the jury would have decided if they hadn't had the shaken baby stuff to deal with. Well, with all due respect, Your Honor, if that were the case, if that's what we base it upon, we could never reverse a decision, never find harmless error, because you'd simply say, well, we don't know what the jury thought, and therefore it's not reversible. I don't believe in harmless error. Would the jury return verdicts of guilty first-degree murder and aggravated battery of the child? Correct. So certainly they believe that the defendant aggravated... And they were instructed on different aspects. They were instructed about bloodhead trauma and shaken baby stuff. I believe they were, yes.  Is it like a... Can we analogize this to a conflicting verdict? I mean, we don't know. We're assuming that the jury found both of those if the finding was guilty on both of those. Well, all we know is the jury convicted the person of first-degree murder and aggravated battery of the child. Correct. And there was evidence of bloodhead trauma and evidence of shaken baby stuff. Correct. And that's what we know. I would also... I just want to add to this. I don't mean to belabor it, but isn't the argument that the defendant in the trial said, I didn't shake this baby. The coroner and the experts said, well, this baby didn't die from being shaken. The baby died from a strike to the head. Correct. And the defendant said, well, I think this child fell a short flight of stairs or short... And the evidence at that time was this injury couldn't have resulted from that short of a fall. Correct. And this new evidence that's being sought to be admitted doesn't just deal with how shaken baby syndrome, you know, can look like blunt force trauma, but in fact is saying that those same short flight of stair falls can kill a child. And sometimes this, what we always thought was shaken baby syndrome, looks just like the short fall from the stair, such that what was his defense then. Right? Isn't that... I mean, that's what... You're saying you strip away the shaken baby syndrome. He still is convicted because they said the death was from the blunt force trauma. And this new evidence says that, yes, that his explanation could do that. Well, here's the thing. There is no new evidence. Okay. And there's nothing supporting... First, it's not in the post-conviction petition. Second, there's nothing in the post-conviction petition attached to it, which is required in the Post-Conviction Act, to say that this is the evidence that shows that the child was not shaken or was a short fall and that caused it. There was no pathologist looking at this. You know, in the Edmonds case, the Dalpreet case, you know, these are cases where they have the doctors and present the evidence and attach it to their petition and say, hey, you know, this is what happened. This is actual evidence. Now the only thing we have are articles that say that maybe, in some instances, not in this specific case. There's nothing to support the finding or the argument in this specific case that the baby was... Thank you. If it's just purely shaken baby syndrome, you don't get a blunt head trauma, do you? No, not generally. I mean, if you're shaking the kid and you bang it against the... Was it sometimes, not generally, or not? Not. Not. I mean, you see... I think the point here is that there's no evidence, regardless of whether you want to chastise the shaken baby syndrome theory, there's no evidence in this case that applies to this case. There's only articles and suggestions that perhaps there is something here, some criticism. And in order to show a claim of actual innocence, you have to have actual evidence of actual innocence. And if that's the way you're framing it, there's no evidence. Your opponent on that point is suggesting that they tried to get a forensic pathologist and forensics about this issue and it was denied. Well, I believe it was heavily ruled upon, the endontologist. They never got it. Right. They never got it. But the endontologist and DNA evidence testing and something else was what they were asking for. Wasn't that for the bite marks? Yes, it was. Okay. This, I thought that they, to present this, they were seeking... Well, there's no real argument. The only argument that's been presented is regarding the endontologist. And what that has to do with the shaken baby, I'm not sure. I think it's separatist. There are separatists. But, yeah, it's not, I don't think it's being argued that it was, had anything to do with the shaken baby syndrome. It's my understanding it was just an additional. It was an additional. But there's no argument in the, that, you know, the... For the purposes of the argument about the, I guess, for lack of a better term, the new evidence, the new body of evidence out there, expert testimony or something out there, the argument is that it wasn't placed into the post-conviction petition. And when, and you're saying, you know, there's no obligation to do that. And that the defendant would have to present expert, some kind of expert test, or affidavits, or something from an expert in his case. And I don't know how you would ever get to that without having somebody put it into an argument and get that person appointed to review that. Well, you can, other people have hired their own experts to get that reviewed. Granted, is that a, you know, people who have money can get their cases reviewed and those that don't. But there are other avenues for a defendant to get experts to review the evidence. The counsel, your opponent is suggesting that, you know, here the judge, there was a motion to get some help from expert testimony. Right. Right. Right, and? And he's saying the judge didn't exercise any discretion. Well, he didn't rule on it because he. So what does that say about his attorney? Should he have pressed for a ruling? Should he have pressed for a ruling? Yes, absolutely. I mean, we put on our brief that it's considered abandoned if you don't file, if you don't ask for the ruling. So I guess I could go into the argument that it was Dr. Lange's reasonable level of assistance. But the other, if I may, briefly. Yeah, go ahead. Okay. The problem has to do with what did the attorney have to work with? And his obligations are to present what was in the defendant's postmortem petition. I mean, that's what he did. So for the various reasons, as addressed in our briefs, we ask that this court, I guess, dismiss in part the post-conviction case because it's premature and otherwise firm. Thank you. Any other questions? Thank you, Mr. Aranda. Mr. Fisher, brief other? Yes, thank you, Your Honor. And I think Your Honor, just as he put it better than I was trying to make it, I was trying to put it as trying to say that the trial was dominated by testimony about shaken baby syndrome. And I think Your Honor said, well, maybe it's a result of that domination. We don't know what the jury thought. Now, if there had only been testimony from the pathologist, the doctor who performed the autopsy, or Dr. Boone, and if all we have is Boone's testimony, well, there's blunt force trauma and I can't rule out shaken baby, and that's all there was, this would be a different case. But again, the State called two additional experts to testify in depth about shaken baby syndrome. The defense felt they had to counter that, so they called their own witness, although he said, yeah, this child died from shaken baby, and that's the biggest impact I come away from reading these trial transcripts. And I think that would have been the impact on the jury as well. And so I think it's fair to conclude that this is something that probably the jury was swayed by. And I think most importantly, the purpose of a trial is to search for the truth, to find out what really happened. And this is an unusual circumstance because we have orders being decided which invalidated the life sentence. We have a post-conviction petition being filed some years later. But there's a further opportunity, and in some of the cases it doesn't exist, but there's a further opportunity based on the difference in the medical opinions to further search for the truth in this case. And this other stuff about shortfalls, that wasn't mentioned in the post-conviction petition, or is it in the briefs? It's in the briefs. There was a testament from Dr. Boone disputing that possibility here at trial. But you're right, it was not a separate issue specifically raised in the post-conviction petition. I suppose a defendant can turn around and try and raise another one, and you get into a question of whether it can be the burden to be able to file a successive petition. With respect to time release, the state art as well here, you file the petition before he received the new sentencing hearing. The defendant is relying on Hager and Ingram, which the court said if the sentence is void, the defendant has to receive a new sentence. It's almost as if he has a new conviction, so now he can challenge that in new post-conviction proceedings. Although the petition here was dismissed before and filed and dismissed before the judge held the new sentencing hearing, even before dismissing the petition, he acknowledged that this defendant had to be resentenced. And interestingly, in its motion to dismiss, the state argued or acknowledged in its motion to dismiss that this defendant must receive a new sentencing hearing. And so if the judge would have done as post-conviction counsel asked and held the new hearing and then reached the merits of the post-conviction issues, I don't think there would be any timeliness question. I agree this case is not on all fours with Hager and Ingram, but I think it's consistent with the purpose and spirit of those cases for this court to say that the defendant was a timely petition in essence and he had the right to challenge his conviction as a result of the new sentencing hearing. Again, defendants, this is a very complex issue. One other thing I'll quickly point out is in my reading of the Edmonds case is not that the defense in that case, in support of the collateral petition, called experts to say that definitely the injuries to the child in Edmonds' case would have been accidental or non-intentional. My reading of Edmonds, at least the decision in the case, is that experts were called to testify about the validity of the diagnosis in general. And the defense presented some saying this is not as open and shut as it was back in the mid- to late-1990s. The state called some experts to say, oh, it's still very valid. And the court granted a new trial because of the dispute, not necessarily because there was hard and fast proof that that child's injuries must have been accidental or non-intentional. So the defendant submits he's basically in the same shoes as Ms. Edmonds. And, therefore, we respectfully ask Your Honors to remain in this cause to allow, again, the issue to be fully developed and presented to the judge and to give the judge a fully informed basis on which to decide whether or not to grant Mr. Thompson a new trial. Are there any other questions? Thank you, Mr. Bishop. Thank you, Your Honors. Mr. Robert, Mr. Bishop, we thank you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel change. Court is in recess.